UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

**BETTY ODOM,**
        Plaintiff,

v.

**MARTIN J. O'MALLEY,
Commissioner of the Social
Security Administration,**
        Defendant.

**Case No. 6:22-cv-1580-CLM**

## MEMORANDUM OPINION

Betty Odom seeks disability and disability insurance benefits from the Social Security Administration ("SSA") based on several impairments. The SSA denied Odom's application in an opinion written by an Administrative Law Judge ("ALJ").

Odom argues that the ALJ erred because: (1) the ALJ didn't properly consider her documented history of excessive absenteeism, and (2) the ALJ's residual functional capacity assessment wasn't supported by a physician's evaluation. As detailed below, the ALJ applied the correct legal standards and substantial evidence supports her decision. So the court will **AFFIRM** the SSA's denial of benefits.

### I. STATEMENT OF THE CASE

#### A. Odom's Disability, as told to the ALJ

Odom was 64 at the time of the ALJ hearing. (R. 37). She has bachelor's and master's degrees in learning disabilities and a B.S. in educational leadership. (*Id.*). Odom's last job was director of special education services for a school district, a position she had held for 10 years. (R. 38). For almost 20 years before that, Odom worked as a special education teacher. (R. 39).

At the ALJ hearing, Odom testified that she has suffered from diabetes for about eleven years. (R. 40–41). Odom also had to have neck surgery and still has some problems with her neck. (R. 45). Odom retired because her impairments were requiring her to miss a lot of work, and her doctor encouraged her to quit because he thought it might help the problems she was having with her diabetes. (R. 40).

According to Odom, her blood sugar the morning of the ALJ hearing was 289 and she had an insulin pump for about a year. (*Id.*). To help control her diabetes, Odom gets a Trulicity shot and takes four oral medications, but she doesn't take medication for neuropathy. (R. 41). Odom also says that for the last two to three years of her employment she missed one to two days of work a month because she couldn't function, was fatigued, and had no energy. (R. 41–42). And Odom's medications cause her nausea and drowsiness. (R. 42).

Odom lives with her husband, who is always close by, but she spends most of the day alone. (R. 43). What Odom does varies day-to-day. (*Id.*). Some days, she goes outside and walks around some, but not for long. (*Id.*). Other days, she is just in the house most of the time. (*Id.*). Though she takes care of a little housework, it's "not a whole lot." (*Id.*). But Odom does drive herself to the doctor and go grocery shopping. (R. 43–44).

### B. Determining Disability

The SSA has created the following five-step process to determine whether an individual is disabled and thus entitled to benefits under the Social Security Act:

| | The 5-Step Test | |
|---|---|---|
| Step 1 | Is the Claimant engaged in substantial gainful activity? | If yes, claim denied. If no, proceed to Step 2. |
| Step 2 | Does the Claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claim denied. If yes, proceed to Step 3. |

| Step 3 | Does the Step 2 impairment meet the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appx. 1? | If yes, claim granted. If no, proceed to Step 4. |
|---|---|---|
| *Determine Residual Functional Capacity* | | |
| Step 4 | Does the Claimant possess the residual functional capacity to perform the requirements of his past relevant work? | If yes, claim denied. If no, proceed to Step 5. |
| Step 5 | Is the Claimant able to do any other work considering his residual functional capacity, age, education, and work experience? | If yes, claim denied. If no, claim granted. |

*See* 20 C.F.R. §§ 404.1520(a), 404.1520(b) (Step 1); 20 C.F.R. § 404.1520(c) (Step 2); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (Step 3); 20 C.F.R. § 404.1520(e-f) (Step 4); 20 C.F.R. § 404.1520(g) (Step 5).

As shown by the gray-shaded box, there is an intermediate step between Steps 3 and 4 that requires the ALJ to determine a claimant's "residual functional capacity," which is the claimant's ability to perform physical and mental work activities on a sustained basis.

  C.  **Odom's Application and the ALJ's Decision**

The SSA reviews applications for benefits in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1-4).

Odom applied for disability insurance benefits and a period of disability in July 2020, claiming that she could not work because of several ailments, including diabetes and high blood pressure. After receiving an initial denial in October 2020, Odom requested a hearing, which the ALJ conducted in March 2022. The ALJ ultimately issued an opinion denying Odom's claims for disability in April 2022.

3

At Step 1, the ALJ determined that Odom was not engaged in substantial gainful activity and thus her claims would progress to Step 2.

At Step 2, the ALJ determined Odom suffered from the following severe impairments: degenerative disc disease of her cervical spine, status-post anterior cervical discectomy and fusion; diabetes mellitus with neuropathy; and hypertension.

At Step 3, the ALJ found that none of Odom's impairments, individually or combined, met or equaled the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. So the ALJ next had to determine Odom's residual functional capacity.

The ALJ determined that Odom had the residual functional capacity to perform light work with these added limitations:

- Odom can occasionally reach overhead with her bilateral upper extremities.

- Odom can occasionally climb ramps and stairs, balance (as that is specifically defined in the Selected Characteristics of Occupations), stoop, kneel, crouch and crawl.

- Odom should never climb ladders, ropes, or scaffolds.

- Odom can have only occasional exposure to extremes of cold, humidity, and full body vibration.

- Odom should have no exposure to hazards such as hazardous machinery and unprotected heights.

At Step 4, the ALJ found that Odom could perform her past relevant work as a director of special education and thus wasn't disabled.

Odom requested an Appeals Council review of the ALJ's decision. The Appeals Council will review an ALJ's decision for only a few reasons, and the Appeals Council found no such reason under the rules to review the ALJ's decision. As a result, the ALJ's decision became the final decision of the SSA Commissioner, and it is the decision subject to this court's review.

## II. STANDARD OF REVIEW

This court's role in reviewing claims brought under the Social Security Act is narrow. The scope of the court's review is limited to (a) whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and (b) whether the ALJ applied the correct legal standards, *see Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford*, 363 F.3d at 1158.

## III. LEGAL ANALYSIS

Odom makes two arguments for why the ALJ erred. First, she argues that the ALJ failed to properly consider her documented history of absenteeism. Second, she asserts that the ALJ failed to adequately develop the record because her residual functional capacity assessment wasn't supported by a physician's evaluation. The Commissioner responds that substantial evidence supports the ALJ's residual functional capacity assessment. The court will address each argument in turn.

### A. Evidence of Absenteeism

Odom first asserts that the ALJ failed to properly consider Odom's documented history of work absences in reaching her determination that Odom wasn't disabled. In support of her claim for disability, Odom submitted records that show that she took around 25 days of sick leave her last year of work. (R. 202–03). The ALJ considered these records but found that they didn't prove Odom was disabled.

The ALJ rejected this evidence because "there are blocks of sick leave that do not correspond to any emergent visit that the claimant had," and these records note "only two to three days of sick leave taken after [Odom's] January 2019 neck surgery." (R. 23). Plus, "[a]lthough these records might be read as indicative of missed days, there is no basis to evaluate these days as there is no legend to explain how [Odom] could be granted sick leave versus vacation; there are no corresponding 'sick' visits to her primary care physician during

5

the blocks of leave noted in her file; and there is no indication that the claimant's employer was concerned about her sick leave." (*Id.*).

Odom says that the ALJ erred because: (a) these leave records distinguish between sick and personal days, and (b) the vocational expert testified at the ALJ hearing that missing more than two days of work per month "would become problematic over a period of time." (R. 55–56). The court disagrees. First, the ALJ seems to have recognized that Odom's leave records distinguished between personal, vacation, and sick days but said she couldn't evaluate these records because they don't explain ***the criteria*** used to grant sick leave. The court cannot say that this rationale for giving Odom's leave records little weight was unreasonable. Second, Odom doesn't challenge the ALJ's finding that her sick leave doesn't correspond to emergent visits or visits to Odom's primary care physician. Having reviewed Odom's medical records, the court finds that substantial evidence supports this reason for rejecting Odom's argument that her leave records establish that she's disabled. (*Compare* R. 200–203 *with* R. 331–391, 410–433). Finally, absenteeism is not a per se "functional limitation caused by [Odom's] impairments that would affect her physical or mental capabilities." *Cherkaoui v. Comm'r of Soc. Sec.*, 678 F. App'x 902, 904 (11th Cir. 2017). And the ALJ correctly noted that no evidence suggests that Odom's employer was concerned about the amount of sick leave she took. (R. 23).

In short, the court is unpersuaded that Odom's sick leave records establish that she's disabled and finds that the ALJ properly addressed this evidence in the hearing decision.

### B.  Development of Record

Odom next asserts that the ALJ erred in not developing the record because there was no physical capacities evaluation in the record and the ALJ didn't order a consultative examination. An ALJ has a basic duty to develop a full and fair record. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). But an ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007).

It is also the sole responsibility of the ALJ to assess a claimant's residual functional capacity. *See* 20 C.F.R. § 404.1546(c). So while an ALJ must consider a medical source's opinion when assessing a claimant's residual functional capacity, the ALJ needn't base her residual functional capacity findings on a physician's opinion. *See Castle v. Colvin*, 557 F. App'x 849, 853–54 (11th Cir. 2014). The record before the ALJ included Odom's medical records, treatment history, hearing testimony, reports of daily activities, and prior administrative medical findings from the state agency medical and psychological consultants. (R. 22–27). And as explained below, substantial evidence supports the ALJ's residual functional capacity assessment. So the ALJ didn't err by not ordering a consultative examination.

### C. Substantial Evidence

Though Odom doesn't devote a specific section of her brief to the argument that the ALJ's residual functional capacity assessment lacks the support of substantial evidence, the thrust of her appeal is that there isn't enough evidence to support the ALJ's disability determination. Odom specifically focuses on her sick leave records and complaints of numbness or tingling in her feet to assert that she suffers from disabling impairments. As explained above, the ALJ adequately addressed Odom's sick leave records and explained why they didn't establish that Odom was disabled. And the ALJ acknowledged that the record included some complaints from Odom of numbness and tingling in her feet. (R. 22). But the ALJ noted that other records showed that Odom denied numbness and tingling. (R. 22, 363, 368, 373, 384, 406, 438, 444). Plus, consistent with her medical records, Odom testified at the ALJ hearing that she doesn't take medication for neuropathy. (R. 41, 436, 442).

The ALJ also correctly noted that Odom underwent an anterior cervical discectomy and fusion in January 2019. (R. 21, 308–09). Post-operative notes say that Odom is "doing very well." (R. 314). And though the ALJ noted that Odom's laboratory results showed elevated glucose and A1c levels, she also noted that treatment included only medication management and counseling about the importance of diet and exercise. (R. 22, 373–74, 376–377, 379, 385–387, 388–390, 404–408, 439–440, 446). Odom's other examination findings were often normal and included normal blood pressure readings, a regular

7

heart rate and rhythm, no murmurs or edema, lungs clear to auscultation, normal breathing, no swelling, and full range of motion in Odom's extremities. (R. 373, 376–377, 378–380, 386–388, 406, 438–439, 444–445).

As for Odom's degenerative disc disease, the ALJ recognized that the record included complaints of tenderness to palpitation of Odom's left leg and buttock, as well as burning in her fingers and pain, stiffness, achiness, and tension in her left lumbar spine and sacroiliac joint. (R. 22). But the ALJ noted that the record shows that Odom's neck pain had improved since her surgery and that it was stable. (R. 22, 368, 384, 388, 410–419, 438). And Odom's records reveal many normal musculoskeletal system findings, including no swelling, only mildly reduced range of motion in the neck at some times, normal range of motion in her neck at other times, normal strength in her extremities, and full range of motion in her extremities. (R. 22, 368, 373, 376–377, 379–380, 384, 388, 406, 438–439, 444–445).

Finally, the ALJ determined that Odom's reported daily activities showed that her impairments weren't as disabling as she alleged. As the ALJ noted, Odom can perform personal care, prepare meals, shop, drive, do laundry, and clean. (R. 22, 225–228). Odom can also walk outside, spend time alone, and go by herself to medical appointments. (R. 22, 43–45).

A reasonable person could look at this evidence and agree with the ALJ's finding that Odom can perform light work with several additional limitations. As the ALJ noted, limiting Odom to the light exertional level; occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; not climbing ladders, ropes, or scaffolds; and occasional exposure to extreme cold, humidity, and full body vibration would accommodate Odom's degenerative disc disease, diabetes, hypertension, and neuropathy. (R. 23). And the limitation to occasionally reaching overhead with her bilateral upper extremities would also accommodate her cervical degenerative disc disease status-post anterior cervical discectomy and fusion. (*Id.*). Plus, preventing Odom from being exposed to hazardous machinery and unprotected heights would accommodate Odom's medication side effects. (*Id.*). In sum, substantial evidence supports the ALJ's residual functional capacity assessment.

## IV. Conclusion

The court has reviewed the parties' briefs, the ALJ's findings, and the record evidence and finds that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision. So the court will **AFFIRM** the SSA's denial of benefits. The court will enter a separate final order that closes this case.

**Done** on January 29, 2024.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE